## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BLAKENEY, | FILED ELECTRONICALLY |
| *Plaintiff*, | Civil Action No. 2:23-cv-1986 |
| vs. | |
| ALARMCO, INC., | |
| *Defendant*. | **TRIAL BY JURY IS DEMANDED** |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Michael Blakeney, by and through his undersigned counsel, and files this Complaint in Civil Action against Defendant, Alarmco, Inc., averring as follows:

## PARTIES

1.      Plaintiff, Michael Blakeney, ("Blakeney") is an adult individual who resides in Leechburg, Pennsylvania 15656.

2.      Defendant, Alarmco, Inc. ("Alarmco"), is registered with the Idaho Secretary of State (the "SOS") as a "business corporation." For purposes of registration with the SOS, Alarmco maintains a "mailing address" of 1675 North Mitchell Street, Boise, Idaho 83704.

## JURISDICTION AND VENUE

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Blakeney brings this lawsuit asserting that Alarmco violated the ADA Amendments Act of 2008,

42 U.S.C. § 1201, *et seq.* (the "ADA")[1] and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") (collectively referred to as the "Federal Law Claims").

4.    Blakeney is also advancing claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101, *et seq.* ("MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (the "WPCL"), and Pennsylvania common law arising under breach of contract (collectively referred to as the "State Law Claims").

5.    This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

6.    Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United States Constitution which supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.    The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.    Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division, (the "Western District") as a substantial part of the events and

---

[1] The Americans with Disabilities Act of 1990 was amended in 2008 (codified as the "ADA Amendments Act of 2008"), 101 Pub. L. No. 336, § 2, 104 Stat. 328, including the definition of "disability" in favor of broader coverage. *See* ADA Amendments Act of 2008, 110 Pub. L. No. 325, § 3, 122 Stat. 3553, 3554 (2008). The "ADA" when referred to herein, refers to the ADA as amended.

omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.

8.       Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

9.       This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Western District of Pennsylvania Local Rules, LCvR 3.

**C.      This Court May Exercise Personal Jurisdiction Over Alarmco.**

10.      This Court may exercise personal jurisdiction over Alarmco as Alarmco has the required minimum contacts with this forum for purposes of Pennsylvania's Long-Arm Statute codified within 42 Pa. C.S. § 5322.  Further, the exercise of jurisdiction over Alarmco by and through Pennsylvania's Long-Arm Statute complies with the traditional notions of fair play and substantial justice required by the Due Process Clause of the Constitution given the "specific jurisdiction" that exists over Alarmco.

11.      At the outset, Pennsylvania's Long-Arm Statute provides that a tribunal may exercise personal jurisdiction where an individual or entity is "transacting any business in this Commonwealth."  42 Pa. C.S. § 5322.

12.      The following enumerated subsections within 42 Pa. C.S. § 5322(a) define "transacting any business" to include the following pertinent instances:

> **(1)** *Transacting any business in this Commonwealth*. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(**i**) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(**ii**) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

* * *

(**iv**) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(**v**) The ownership, use or possession of any real property situate within this Commonwealth.

* * *

(**3**) Causing harm or tortious injury by an act or omission in this Commonwealth.

(**5**) Having an interest in, using, or possessing real property in this Commonwealth.

* * *

(**10**) Committing any violation within the jurisdiction of this Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit.

42 Pa. C.S. § 5322(a)(1), (3), (5), (10).

13.     In the instant matter, personal jurisdiction can be found over Alarmco under Pennsylvania's Long-Arm Statute for the following reasons:

(a)     Alarmco contracts business in Pittsburgh, Pennsylvania, and routinely engages in commercial activities within the Commonwealth of Pennsylvania for the purpose of pecuniary gain;

(b)     Alarmco entered into an employment agreement with Blakeney, who, at all times relevant hereto, was living in Pittsburgh, Pennsylvania, such that he also executed the employment agreement in Pittsburgh, Pennsylvania; and

(c)    As averred more fully below, Alarmco violated numerous statutory provisions of federal and state law and the underlying events giving rise to Alarmco's unlawful conduct, including the harm sustained by Blakeney as a result of Alarmco's actions.

14.    This Court's exercise of personal jurisdiction over Alarmco by and through Pennsylvania's Long-Arm Statute comports with the Due Process Clause of the Constitution through the "specific jurisdiction" that exists over Alarmco as the causes of action complained of herein arise specifically from Alarmco's contact with the forum.  U.S. Const. amend XIV, § 1.

15.    The inquiry into whether "specific jurisdiction" exists possesses three parts:

(a)    First, a "defendant 'must have purposefully directed [its] activities' at the forum";

(b)     Second, the instant litigation must "arise out of or relate to at least one of those activities"; and

(c)    Third, whether the exercise of jurisdiction "comport[s] with fair play and substantial justice."

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

16.    Alarmco has engaged in business operations for pecuniary gain within the forum and those business operations were, at all times relevant hereto, intentionally effectuated by Alarmco.

17.    As more thoroughly delineated below, Blakeney participated in Alarmco's business operations, through an employment relationship and Alarmco's service contracts for work in Pennsylvania, and correspondingly the Federal Law Claims and the State Law Claims arise from

said relationship, such that the Federal Law Claims and the State Law Claims arose because of these business operations.

18.    Finally, the exercise of personal jurisdiction exists over Alarmco complies with the notions of "fair play and substantial justice" required by *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**D.    Blakeney Has Exhausted Administrative Remedies; His Federal and State Law Claims Are Properly Before This Court.**

19.    Blakeney has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court.  Specifically:

(a)    On or about April 28, 2023, Blakeney dual filed a charge of discrimination seeking redress for the Federal Law Claims and the State Law Claims with the Equal Employment Opportunity Commission (the "EEOC") at charge number 533-2023-01708 (the "EEOC Charge").

(b)    On November 3, 2023, the EEOC issued Blakeney the Notice of Right to Sue (the "NRTS") wherein Blakeney was afforded 90 days within which to timely file the Federal Law Claims and the State Law Claims.  A true and correct copy of the NRTS is attached hereto, made a part hereof, and identified as **Exhibit A**.  The instant Complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

20.    In July 2022, Blakeney commenced his employment with Alarmco as a National Installation Technician ("Technician").

21. The employment relationship is memorialized in the Letter of Employment Offer from Alarmco to Blakeney, dated July 17, 2022 ("Offer Letter").  A true and correct copy of the Offer Letter is attached hereto as **Exhibit B** and incorporated herein.

22. The scope of Blakeney's work included traveling throughout the United States, including Pennsylvania, for "Professional Quality Installations of projects," including security, fire, and closed-circuit television systems for commercial, industrial, and government clients. (Ex. B).

23. In the chain of command, Blakeney ultimately reported to Alarmco's CEO, Corrine McKague ("McKague").

24. Blakeney was compensated at a rate of $40.00 per hour, working approximately seventy (70) to eighty (80) hours per week.

**A.      The Work-Related Injury**

25. Blakeney's job often required him to use a ladder in order to install various systems.

26. On October 7, 2022, Blakeney was working at a production plant located at 499 Nixon Road, Cheswick, Pennsylvania 15024 (the "Facility").

27. Alarmco had contracted with the owner of the Facility, Packaging Corporation of America, for installation of security equipment in the Facility.

28. On said date, there was a vertical post that was bolted to the floor of the Facility and one of the bolts that was securing the post to the floor protruded above the nut.

29. While carrying a ladder through the Facility and performing his work duties, Blakeney sustained a work-related injury whereupon the ladder caught on the protruding portion of the bolt, causing him to fall and injure the fifth digit on his left hand (the "Work-Related Injury").

30.     Immediately thereafter, Blakeney went to the emergency room and received fourteen stitches to his left hand.

31.     Blakeney then visited a hand specialist, Steven E. Kahn, M.D., ("Dr. Kahn") who advised that Blakeney would not regain complete function of his left hand, could not fully perform the job duties of a Technician at that time, and, after the healing process, could return to work in a light or modified duty-capacity.

32.     Following Dr. Kahn's diagnosis, on October 15, 2022, Blakeney filed a Claim Petition for Workers' Compensation ("WC Claim Petition") under Pennsylvania's Workers' Compensation Act ("WCA") and instigated proceedings within Pennsylvania's workers' compensation system (the "Workers' Compensation Proceedings").

33.     Ultimately, Blakeney received temporary total disability benefits ("TTD Benefits") because he was completely and utterly unable to perform any type of work as a result of the Work-Related Injury.

34.     Blakeney collected TTD Benefits while he recuperated from the Work-Related Injury and underwent physical therapy at the direction of his medical physician.

35.     However, upon receiving notice that Blakeney filed the WC Claim Petition, Alarmco immediately retaliated against Blakeney, banned him from Alarmco's premises, and advised him that he could not return to work because he hired a lawyer for purposes of the WC Claim Petition.

36.     The context of Alarmco's sentiment evidenced its retaliatory animus concerning Blakeney's instigation of the Workers' Compensation Proceedings.

37.     The Workers' Compensation Proceedings were ongoing through March 2023.  Due to Alarmco's failure to pay the correct amount of indemnity benefits owed to Blakeney, Blakeney

filed a second Claim Petition on December 12, 2022, and a Penalties Petition on December 15, 2022.

38.    On or about January 4, 2023, during a hearing on Blakeney's Workers' Compensation Claim and Penalty Petitions, Alarmco agreed to commence payment of indemnity benefits to Blakeney.    Accordingly, Blakeney and Alarmco executed an Agreement for Compensation for Disability or Permanent Injury.

**B.    Blakeney's Termination**

39.    At all times relevant hereto, the Work-Related Injury constituted a medical condition that substantially impaired Blakeney's major life activities and rendered him disabled under the ADA and the PHRA (the "Disability").

40.    More precisely, Blakeney's Disability substantially impaired significant aspects of his major life activities, including, but not limited to, performing work as a Technician and utilizing his left hand.

41.    On December 29, 2023, Dr. Kahn provided Blakeney with a medical note that outlined his treatment plan and stated that Blakeney could resume work in a modified or light duty-capacity, effective immediately.

42.    Alarmco was notified of Blakeney's ability to return to work and was provided a copy of Dr. Kahn's note on January 25, 2023.

43.    Blakeney then contacted Alarmco about performing the Technician position in a modified capacity or some other suitable position (the "Accommodation Request").

44.    In response, Alarmco flatly denied Blakeney's Accommodation Request and refused to engage in any efforts to discuss or arrive at reasonable accommodations for Blakeney.

45.    In February 2023, and subsequent to the above, McKague called Blakeney and ordered him to send his work equipment back to Alarmco's office, further advising that he could not return to work, effectively terminating Blakeney from his position.  The stated reason for the termination was because Blakeney "got a lawyer involved," clearly referring to the Workers' Compensation Proceedings.

C.    **Wages & Overtime**

46.    As stated above, during Blakeney's time working as a Technician for Alarmco, he worked approximately seventy (70) to eighty (80) hours a week.

47.    Alarmco's established procedure for pay periods is identified in the Employee Handbook provided to Blakeney upon his hire, which provides that, "[a]ll employees are paid every two weeks on a Friday."  (Employee Handbook, p. 6).

48.    At all times relevant hereto, Blakeney was classified as a "non-exempt" employee pursuant to the FLSA and the MWA.[2]

49.    As stated in the Offer Letter, Blakeney's hourly wage was $40.00 per hour for work performed on "PCA and BC" projects.  Blakeney was separately compensated for travel time at $25.00 per hour.

50.    Regardless of the variable rate of pay, Alarmco remained obligated to pay Blakeney one hundred and fifty percent of his standard hourly wage of $40.00 per hour, as well as $60.00 per hour, for each and every hour that Blakeney worked in excess of forty (40) hours per week in compliance with the mandates of the FLSA and the MWA.

---

[2]  Alarmco's Employee Handbook expressly provides that, "[n]on-exempt employees are eligible to receive overtime pay in accordance with state and federal wage and hour laws (FLSA)." (Employee Handbook, p. 6).

51.    The overtime calculation is consistent with the policy set forth in Alarmco's Employee Handbook, which provides: "Nonexempt employees are to be paid time and one-half (1.5) for work time that exceeds 40 hours during a scheduled workweek. . . The calculation of overtime hours will not include holiday, travel time, sick leave or vacation days during a given scheduled workweek." (Employee Handbook, p. 7).

52.    At all times relevant hereto, Alarmco paid Blakeney at a rate of only $45.00 per hour for any hours worked over forty (40) hours in a given week ("Overtime Deduction Practice").

53.    Therefore, Alarmco failed to pay Blakeney the minimum rate or wage of pay, much less the overtime rate of pay, for hours that Blakeney expended above and beyond forty (40) hours a week.

54.    To date, Alarmco has failed to pay Blakeney the wages it owes him as a result of its unlawful implementation of the Overtime Deduction Practice.

## COUNT I
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA AND THE PHRA
## 42 U.S.C. § 1201, *et seq.* and 43 Pa. Cons. Stat. § 951, *et seq.*

55.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

56.    The ADA was first enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities. 42 U.S.C. § 12101. Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

57.    Although the PHRA was not amended following the amendment of the ADA, this Court continues to treat a PHRA discrimination claim as coextensive with an ADA claim. *See*

*Doyle v. Senneca Holdings, Inc.*, 2:20-CV-01293-JFC-CRE, 2022 U.S. Dist. LEXIS 41790, at *8, n.1 (W.D. Pa. Mar. 9, 2022) (citing *Rinehimer v. Cemclift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002); *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000) (interpreting the PHRA in accord with its federal counterparts under the ADA and Rehabilitation Act); *Drizos v. PNC Invs. LLC*, Civil Action No. 19-1651, 2022 U.S. Dist. LEXIS 60719, at *13 (Pa. W.D. Mar. 31, 2022) (same).

58.    To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.    Blakeney is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

59.    As established herein, Blakeney had and continues to suffer from a "disability" under the meaning of the ADA and was correspondingly "disabled" for purposes of establishing his *prima facie* case, given the numerous ways in which the Disability substantially impaired his major life activities.

60.    Specifically, Blakeney experienced pain, swelling, and mobility issues due to the Disability.  Correspondingly, Blakeney was disabled within the meaning of the ADA and PHRA as a result of his Work-Related Injury and Disability as a result thereof.

**B.    Blakeney is a "Qualified Individual" Pursuant to 42 U.S.C. § 12111 of the ADA and Was Qualified to Perform the Essential Functions of His Job With or Without Reasonable Accommodations.**

61.    At all times material, Blakeney was qualified to perform the essential functions of the Technician position.

62.    The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

63.    To meet this definition, Blakeney must show he possessed "the requisite skill, experience, education and other job-related requirements of the employment position" and that he "can perform the essential functions of the position with or without reasonable accommodations. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

64.    Blakeney possessed and exercised the skill, experience, and ability needed to perform the essential functions of his position.  Specifically, Blakeney was sufficiently skilled in the areas of comprehension, communication, interpretation, and analysis needed to install and implement Alarmco's products within the relevant facilities to which Blakeney was assigned.  Further, Blakeney was muscularly able to comply with the physical demands of the Technician position given the extensive background Blakeney possessed in laborer-style roles.

65.    Further, during his employment, Blakeney performed his assignments without a single issue or complaint levied against him concerning safety or performance.  In other words, Alarmco ratified the fact that Blakeney was qualified to perform the essential functions of the Blakeney.

66.    In January 2023, Blakeney acquired a medical note from his hand specialist, Dr. Kahn, outlining his treatment plan and stating that Blakeney could resume work in a modified or light duty capacity.

67.    Blakeney could have readily performed job duties had Alarmco granted him reasonable accommodation.

68.     However, Alarmco refused such request and further refused all efforts to discuss any type of accommodation.

**C.    Blakeney Suffered an "Adverse Employment Action" as a Result of Discrimination.**

69.     "It is well settled that termination is an adverse employment action." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp.3d 304, 315 (E.D. Pa. 2020) (internal citation omitted).

70.     Less than one month after Blakeney notified Alarmco of the Accommodation Request, Alarmco terminated Blakeney.

71.     Notably, at the time Blakeney was terminated, he was also receiving TTD Benefits and remained totally disabled as a matter of law under the WCA.

72.     As a natural corollary to these facts, it is readily inferable that Alarmco discharged Blakeney because of his Disability.

**D.    Blakeney is Entitled to Pursue Punitive Damages as Alarmco Discriminated Against Him with Malice and Reckless Indifference to His Federally Protected Rights.**

73.     A plaintiff may recover punitive damages where he can demonstrate a defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1). The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination". *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

74.     At all times material, Alarmco acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Blakeney who were statutorily protected by the ADA.

75.    In ultimately terminating Blakeney, Alarmco acted both with malice and reckless indifference to Blakeney's federally protected rights and Alarmco's actions warrant Blakeney's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

76.    As a direct and proximate result of Alarmco's discriminatory conduct in violation of the ADA and the PHRA, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT II
## FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA AND PHRA
## 42  U.S.C. § 1201, *et seq.*; 43 P.S. § 951, *et seq.*

77.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

78.    The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A).

79.    In the context of a claim for failure to accommodate, "[a]dverse employment decisions. . . include refusing to make reasonable accommodations for a plaintiff's disabilities." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004).  *See also, Mercer*

*v. Southeastern Pa. Transit Auth.*, 26 F. Supp.3d 432, 440 (E.D. Pa. 2014) (internal citation omitted) ("The adverse employment decisions barred by the ADA include not only adverse actions motivated by prejudice and fear of disabilities, but also. . . failing to make reasonable accommodations for a plaintiff's disabilities.").

A.    **Alarmco Failed to Engage in the Interactive Process to Determine Reasonable Accommodation for Blakeney.**

80.    "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: '1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999)). *See also, Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (iterating the same elements); *Tourtellotte v. Eli Lily & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016) (same).

81.    Alarmco was on notice of Blakeney's injury when he reported the injury to his project manager and subsequently when he filed his claim for TTD Benefits pursuant to the WCA.

82.    Alarmco was put on notice and had express knowledge of Blakeney's Disability, including his limitations as a result of the Disability.

83.    As stated above, Dr. Kahn provided Blakeney a medical note outlining a treatment plan stating Blakeney could return to work in a modified or light duty capacity.

84.    In turn, Blakeney contacted Alarmco about performing the Technician position in a modified capacity or other suitable position.

85.    In response to Blakeney's request for accommodation, Alarmco did not make a good faith effort to assist Blakeney.  Not only did Alarmco refuse such request, but it also declined to engage in any type of accommodation discussions and instead banned him from the company premises upon learning of his Disability, which was sustained as a result of a workplace injury.

86.    Blakeney again initiated an Accommodation Request when his medical physician cleared him to return to work on modified duty, and Alarmco again declined to engage in any attempts to reach a reasonable accommodation; instead, Alarmco terminated Blakeney's employment.

87.    Alarmco arbitrarily and unilaterally determined on its own accord that the Disability rendered Blakeney, *per se*, unfit to perform any type of role without first engaging in the interactive process to determine whether there was a suitable accommodation.

88.    In failing to implement or engage in any type of accommodation and instead terminating Blakeney, Alarmco contravened the ADA in failing to provide Blakeney with reasonable accommodation.

89.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## WRONGFUL DISCHARGE
## IN VIOLATION OF PUBLIC POLICY

90.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

91.    Pennsylvania state and federal courts have long recognized a claim for wrongful discharge where a public policy is threatened or violated by the employee's discharge. *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974); *Reuther v. Fowler and Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1978); *Hunter v. Port Authority of Allegheny Co.*, 419 A.2d 631 (Pa. Super. 1980); *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170 (Pa. Super. 1989); *Macken v. Lord Corp.*, 585 A.2d 1106 (Pa. Super. 1991); *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628 (Pa. Super. 1993); *Highhouse v. Avery Transp.*, 660 A.2d 1374 (Pa. Super. 1995); *Raykovitz v. K Mart Corp.*, 665 A.2d 833 (Pa. Super. 1995); *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998); *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511 (Pa. 2005); *Haun v. Cmty. Health Sys.*, 14 A.3d 120 (Pa. Super. 2011); *Owens v. Lehigh Valley Hosp.*, 103 A.3d 859 (Pa. Commw. 2014); *Monkelis v. Scientific Systems Services,* 653 F.Supp. 680 (W.D. Pa. 1987); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir. 1988); *Wetherhold v. RadioShack Corp.*, 339 F.Supp.2d 670 (E.D. Pa. 2004); *Lambert v. Envtl. Restoration Group, Inc.*, 2:07-cv-1573, 2008 WL 723328 (W.D. Pa. 2008).

A.    **The Workers' Compensation Act Embodies Pennsylvania's Public Policy.**

92.    An "employer's privilege to dismiss an employee with or without cause is not absolute. . . and may be qualified by the dictates of public policy." *Shick*, 716 A.2d at 1233.

93.    It is well-established that Pennsylvania recognizes an exception to the at-will employment relationship for wrongful discharge when an employee is terminated for seeking benefits under the WCA. *Shick*, 716 A.2d at 1231 (Pa. 1998).

94.     In order for the goals of the WCA "to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal.  If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined."  *Shick*, 716 A.2d at 1237.  *See also, Rothrock*, 883 A.2d 511.

95.     The Pennsylvania Supreme Court has held that termination of an at-will employee for filing a workers' compensation claim violates public policy.  *Shick*, 716 A.2d at 1237.

96.     Consequently, in *Owens*, 103 A.3d 859, the Commonwealth Court of Pennsylvania held that a cause of action exists under Pennsylvania law for wrongful discharge of an employee because that employer was receiving workers' compensation benefits from an employer in accordance with the WCA.

**B.     Blakeney Sought to Invoke His Right to Seek Workers' Compensation Benefits for His Workplace Injury.**

97.     As averred above, on October 7, 2022, Blakeney sustained the Work-Related Injury and thereafter began receiving TTD Benefits.

98.     Alarmco challenged Blakeney's WC Claim Petition, seeking to deny him the benefits owed to him under the WCA; however, the workers' compensation judge issued an Order directing Alarmco to pay workers' compensation benefits.

99.     The Workers' Compensation Proceedings nonetheless remained ongoing throughout the remainder of Blakeney's employment due to Alarmco's challenge to the WC Claim Petition and refusal to remit the full amount of benefits owed to Blakeney under the WCA.

**C.      Alarmco Violated the Public Policy Embodied in the WCA by Terminating Blakeney.**

100.    As set forth above, at the time of Blakeney's termination, the Workers' Compensation Proceedings were ongoing, including disputes concerning the appropriate amount owed by Alarmco to Blakeney.

101.    Alarmco specifically identified the Workers' Compensation Proceedings and Blakeney's decision to seek benefits under the WCA as the reason for his termination.

102.    There is sufficient temporal proximity between the WC Claim Petition filed on October 15, 2023, and Blakeney's termination in February 2023, due to Alarmco's pattern of antagonism toward Blakeney, including prohibiting him from entering Alarmco's premises because he "got a lawyer involved."

103.    Alarmco wrongfully terminated Blakeney in violation of Pennsylvania's strong public policy embedded within the WCA.

**D.      Blakeney is Entitled to Economic, Compensatory, and Punitive Damages.**

104.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

105.    Punitive damages are warranted and appropriate given Alarmco's intentional and malicious conduct.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

<u>COUNT IV</u>
**FAILURE TO PAY OVERTIME WAGES
IN VIOLATION OF THE FLSA
29 U.S.C. § 201, *et seq.***

106.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

107.    Prefatorily, the FLSA mandates two (2) minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

108.    The FLSA establishes a heightened rate of one hundred fifty percent (150%) multiplied by the employee's base rate of pay for any hours worked in excess of hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

**A.    Alarmco is an "Employer" Subject to the FLSA.**

109.    The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

110.    In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself, here, Alarmco, regardless of which employee and/or agent implemented to unlawful policy.  *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

111.    Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work."  29 U.S.C. § 203(g).

112.    Alarmco extended a position-for-hire to Blakeney with specified duties, start-times, and pay-rates.

113.    Alarmco possessed ultimate authority and control over Blakeney and instructed Blakeney to perform certain tasks for the financial benefit of Alarmco.

114.    At all times relevant hereto, Alarmco exercised a position of power and authority over Blakeney begetting that of an "employer" role in the relationship.

115.    At all times relevant hereto, Alarmco also controlled the general terms and conditions of Blakeney's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Blakeney was subjected to as a condition of employment.

116.    As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Alarmco "permitted" Blakeney to work and thus "employed" Blakeney per 29 U.S.C. § 203(g).

117.    As such, Alarmco is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Blakeney and is therefore liable for violations of the FLSA.

118.    Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00.  *Id*.

119.    Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

120.    Alarmco purchased materials, supplies, and security equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations in various states.

121.    Alarmco contracted with businesses throughout the United States for installation of security, fire, and closed-circuit television systems and equipment.

122.    Additionally, Alarmco transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

123.    Alarmco regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

124.    Upon information and belief, Alarmco provided security, fire, and closed-circuit television systems and services in various states, including Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services and sales that it has effectuated, Alarmco had an annual dollar volume of sales in excess of $500,000.00.

125.    Therefore, the second prong of 29 U.S.C. § 206(s)(1)(A)(i) is satisfied.

126.    Accordingly, Alarmco is "engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

**B.    Blakeney is an "Employee" Under the FLSA.**

127.    Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.   29 U.S.C. § 203(e)(1).

128.    To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

129.    In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)).

130.    "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service."  *Martin*, 949 F.2d at 1293 (internal citation omitted).

131.    At all times relevant hereto, Alarmco possessed and, in fact, exercised its right to control Blakeney's job duties, namely with respect to the decisions and directives concerning where, how, and when Blakeney was to provide and install security, fire, and closed-circuit television systems and services.

132.    Alarmco also exerted significant control over the manner in which Blakeney performed his workplace duties.

133.    Alarmco delineated the methodologies involved in the completion of Blakeney's duties, denoted his expected rate of productivity, dictated the speed in which Blakeney was to complete his tasks, and designated the specific projects on which Blakeney was to provide and install security, fire, and closed-circuit television systems and services.

134.    Blakeney had no personal financial investment in Alarmco's operations.

135.    Blakeney also had no opportunity to obtain additional remuneration based on the exercise of managerial skill because Blakeney never worked in a managerial or supervisory capacity.

136.    Instead, Blakeney was compensated at a determined hourly rate in his role.

137.    All the compensation that Alarmco disbursed to Blakeney was derived from hours recorded within Alarmco's Overtime Deduction Practice, and Blakeney was dependent on that compensation structure.

138.    In performing his job duties, Blakeney did not utilize any "special skill" akin to that of a licensed professional.

139.    Nonetheless, the workplace duties which Blakeney completed were an integral component of Alarmco's day-to-day operations, as evidenced by the amount of overtime and energy that Blakeney expended during his employment with Alarmco.

140.    Finally, Blakeney was completely dependent on Alarmco because Alarmco had the clientele and wherewithal necessary to bestow Blakeney with work.

141.    Blakeney is an "employee" for purposes of the FLSA.

**C.    Alarmco Was Obligated to Pay Overtime in Accordance with the FLSA.**

142.    Given Alarmco's status as an "employer" and that it is "engaged in commerce," and Blakeney's status as an "employee," Alarmco was obligated to comply with the overtime rate of pay requirements of the FLSA.

143.    That is, at all times hereto, Alarmco was mandated to pay Blakeney one hundred fifty percent (150%) of his corresponding base rate of pay for any time worked beyond forty (40) hours in a seven-day (7) period.  29 U.S.C. § 207(a)(1).

144.    As previously averred in this Complaint, Blakeney worked, on average, seventy (70) to eighty (80) hours per week.

145.    Consequently, Blakeney engaged in hours of work that Alarmco was legally obligated to compensate him at the overtime rate of pay.

146.    However, despite Blakeney's protests and complaints to Alarmco about the lack of overtime pay, Alarmco explicitly refused to pay Blakeney overtime pay for the overtime hours that he worked.

147.    Instead, as averred above, Alarmco implemented the Overtime Deduction Practice and effectuated a scheme that refused to pay Blakeney any overtime whatsoever for the number of hours that Blakeney worked above and beyond forty (40) on a weekly basis.

148.    Therefore, Alarmco violated 29 U.S.C. § 207(a)(1) in failing to pay Blakeney overtime wages.

**D.    Blakeney is Entitled to Actual and Liquidated Damages, and Attorneys' Fees and Costs.**

149.    Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

150.    An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin*, 949 F.2d at 1299 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

151.    In describing the compensatory nature of this remedy, the Supreme Court of the United States has held that, "the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (citing *Missel*, 316 U.S. at 572 (1942)). *See also, Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 U.S. Dist. LEXIS 44139, at *11 (E.D. Pa. Mar. 19, 2018) (quoting same).

152.    Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

153.    Alarmco's willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Blakeney's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Blakeney's damages.

154.    Alarmco is unable to meet its burden of establishing "good faith and reasonable grounds" for its violation of Blakeney's rights. This is demonstrated by Alarmco's willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

155.    Therefore, Alarmco is liable to Blakeney for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

156.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT V
### FAILURE TO REMIT OVERTIME WAGES
### IN VIOLATION OF THE MWA
### 43 Pa. Stat. § 333.101, *et seq.*

157.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

158.    The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  See 43 P.S. § 333.104.

159.    Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary. . . ."  43 P.S. § 333.104(c).

**A.    Alarmco is an "Employer" Under the MWA.**

160.    The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

161.    In that the MWA's definition of "employer" is nearly identical to the FLSA, the analysis is the same under the MWA as under the FLSA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

162.    As previously averred, and for the same reasons Alarmco is an "employer" for purposes of the FLSA, Alarmco is also an "employer" for purposes of the MWA.

163.    Alarmco routinely and regularly conducts business in the Commonwealth of Pennsylvania and routinely and regularly solicits business in Pennsylvania, including contracts for installation of security equipment in Pennsylvania.  Alarmco employs individuals in the Commonwealth of Pennsylvania for a commercial purpose and the financial benefit of Alarmco.

**B.    Blakeney is an "Employee" Under the MWA.**

164.    The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

165.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

166.    In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

167.    Because Blakeney is an "employee" for purposes of the FLSA, Blakeney is also an "employee" for purposes of the MWA.

**C.    Alarmco is Liable for Violation of the MWA.**

168.    Consequently, given Alarmco's status as an "employer" and Blakeney's status as an "employee," Alarmco was obligated to comply with the overtime wage requirements of the MWA.

169.    Alarmco failed to pay Blakeney the full amount of wages owed for the overtime hours that he worked in violation of 43 P.S. § 333.104(c).

170.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with 43 P.S. § 333.104(c).

171.    Alarmco is liable to Blakeney for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

172.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT VI
## FAILURE TO REMIT WAGES
## IN VIOLATION OF THE WPCL
## 43 P.S. § 260.1 *et seq.*

173.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

174.    The WPCL provides the employee with a statutory remedy to enforce its rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

175.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

176.    This statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

**A.    Alarmco is an "Employer" Under the WPCL.**

177.    The WPCL defines an "employer" to include "every person, association, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any [person, association, firm, partnership, association, corporation, receiver or other officer] employing any person in this Commonwealth." 43 Pa. Stat. § 260.2a.

178.    Alarmco is a business "corporation" that employs individuals, including Blakeney, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

**B.    Blakeney is an "Employee" Under the WPCL**

179.    As averred repeatedly throughout this Complaint, Alarmco and Blakeney maintained an employment relationship, whereby Blakeney was an "employee." This factual reality remains true for purposes of the WPCL as well.

180.    Although the WPCL does not define "employee," courts in the Third Circuit have looked to the definitions set forth in the WCA, 77 P.S. § 1 *et seq.*, and the Pennsylvania Unemployment Compensation Act ("UCA"), 43 P.S. § 751 *et seq.*, finding the definitions of employee provided therein to be "persuasive." *Frank Burns, Inc. v. Interdigital Communications Corp.*, 704 A.2d 678, 680 (Pa. Super. 1998); *Synesiou v. DesignToMarket, Inc.*, 2002 U.S. Dist. LEXIS 5687, at *5 (E.D. Pa. Apr. 2, 2002).

181.    The WCA defines "employe" as:  "All natural persons who perform services for another for a valuable consideration. . . ." 77 P.S. § 22.  A workers' compensation judge has already determined that Alarmco is an employer under the WCA.

182.    The UCA defines "employe" as: "every individual, whether male, female, citizen, alien or minor, who is performing or subsequent to January first, one thousand nine hundred thirty-six, has performed services for an employer in an employment subject to this act." 43 P.S. § 753(i).

183.    Regardless of which definition the Court relies upon (WCA or UCA), Blakeney is an "employee" for purposes of the WPCL.

**C.    Blakeney Accrued "Wages" Within the Purview of 43 P.S. § 260.2a.**

184.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

185.    Blakeney has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Alarmco in exchange for compensation in the form of an hourly rate commensurate with the time Blakeney expended in performance of said duties.

186.    Alarmco has not asserted a dispute over the wages due and owing to Blakeney and has not provided written notice of conceded or disputed wages associated with Blakeney pursuant to 43 P.S. § 260.6.

187.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on the established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

188.    Alarmco's Established Payday Procedure is identified in the Employee Handbook provided to Blakeney upon his hire, and provides that, "[a]ll employees are paid every two weeks on a Friday."  (Employee Handbook, p. 6).

**D.    Blakeney is Entitled to Damages Under the WPCL.**

189.    Section 260.10 of the WPCL permits an award of liquidated damages equal to twenty-five percent (25%) of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within thirty (30) days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.

190.    Accordingly, per the above statutory provisions, Alarmco was legally obligated to provide Blakeney with his owed wages when he was not paid those wages for thirty (30) days beyond Alarmco's Established Payday Procedure.

191.    By omission, Alarmco has refused to pay Blakeney all wages due and owing to him well beyond thirty (30) days of the date of the Established Payday Procedure.

192.    As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Alarmco's implementation and utilization of Overtime Deduction Practice.

193.    To date, Alarmco has not paid Blakeney the above-mentioned wages that are due and owing to Blakeney.

194.    Alarmco has violated 43 P.S. § 260.10 in failing to pay owed wages to Blakeney.

195.    Additionally, Alarmco has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Blakeney's disbursed wages.

196.    Alarmco's actions described hereinabove were the direct and proximate cause that resulted in violations of Blakeney's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Blakeney's damages.

197.    Consequently, Blakeney is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

198.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorney's fees. 43 P.S. § 260.9a(f).

199.    As such, Blakeney is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Alarmco's conduct described hereinabove.

200.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT VII
### BREACH OF CONTRACT
### PURSUANT TO PENNSYLVANIA COMMON LAW

201.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

202.    To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002)).

203.    By the Offer Letter dated July 17, 2022, Alarmco made a bona fide contractual offer of employment to Blakeney, whereby Blakeney agreed to exchange his time and efforts, within the context of gainful employment with Alarmco, for designated hourly wages.

204.    The terms of Blakeney's employment were further laid out in the Employee Handbook that Alarmco provided to Blakeney and required him to sign.

205.    Per the Offer Letter and Employee Handbook, Alarmco agreed to compensate Blakeney a designated rate of $40.00 per hour for the first 40 hours worked in a scheduled workweek, and an overtime compensation rate of time and a half (1.5) for work that exceeded 40 hours during a scheduled workweek.

206.    However, as alleged in the Complaint hereinabove, by omission, Alarmco has failed to pay Blakeney at the above-mentioned overtime rate of pay and therefore breached the terms of the employment agreement on a multitude of occasions.

207.    In addition, as reiterated throughout this Complaint, Alarmco owes Blakeney wages by implementing and utilizing the Overtime Deduction Practice.

208.    In accordance with the terms of Blakeney's employment, and applicable statutory law, Alarmco owes Blakeney these wages at a rate of $60.00 per hour.

209.    Alarmco's actions described hereinabove were the direct and proximate cause that resulted in breaches of the employment contract, deprived Blakeney of his entitlement to accrued pay, and resulted in lost wages.

210.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered tangible economic loss in the form of lost pay and is entitled to compensatory and consequential damages for Alarmco's contractual breaches, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT VIII
## UNJUST ENRICHMENT
## PURSUANT TO PENNSYLVANIA COMMON LAW

211.    Blakeney incorporates the above paragraphs, as if fully set forth at length herein.

212.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

213.    A plaintiff must show three (3) elements to establish a cause of action for unjust enrichment: (1) a benefit conferred on a Alarmco by the plaintiff; (2) appreciation of such benefits by the Alarmco; and (3) acceptance and retention of such benefits by the Alarmco under such circumstances that it would be inequitable for Alarmco to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

214.    Blakeney conferred a benefit to Alarmco by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Alarmco's business.

215.    Indeed, Blakeney's performance of work hours to which he never received his agreed upon compensation rate, let alone the overtime rate of pay, as detailed and described above, constitutes a benefit that was directly conferred to Alarmco.

216.    Alarmco retained and accepted the benefit of Blakeney's labor and services without issue, objection, or delay.

217.    By accepting Blakeney's labor and services, and by failing to pay Blakeney at the overtime rate of $60.00 per hour, Alarmco has been unduly enriched.

218.    As a matter of justice and fairness, it would be manifestly unjust and inequitable for Alarmco to retain the benefit of the above-mentioned labor and services hours without paying Blakeney due compensation.

219.    Alarmco's actions described hereinabove were the direct and proximate cause of Alarmco's unjust enrichment and the damages it owes Blakeney for retaining a benefit without paying for its value.

220.    As a direct and proximate result of Alarmco's conduct described hereinabove, Blakeney has suffered tangible economic loss in the form of lost back pay and is entitled to recoup the amount of the benefit he conferred upon Alarmco and that Alarmco unjustly retained.

WHEREFORE, Plaintiff, Michael Blakeney, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## REQUEST FOR RELIEF

221.    For the above stated reasons, Plaintiff, Michael Blakeney, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Alarmco, Inc., and prays for relief as follows:

(a)    Declare and find that Alarmco committed one or more of the following acts:

(i)    Violated the ADA and/or the PHRA in terminating Blakeney on the basis of his disability;

(ii)    Violated the ADA and/or the PHRA in failing to accommodate Blakeney on the basis of his disability;

(iii)    Acted with malice and/or reckless indifference to Blakeney with regard to his federally protected rights under the ADA;

(iv)    Violated Pennsylvania's public policy in terminating Blakeney because he was receiving workers' compensation benefits in accordance with the WCA;

(v)    Violated provisions of the FLSA by failing to pay Blakeney overtime wages and did so willfully;

(vi)    Violated provision of the MWA in failing to pay Blakeney overtime wages and did so willfully;

(vii)    Violated provisions of the WPCL in failing to remit wages to Blakeney and did so willfully;

(viii)    Breached its employment contract with Blakeney in failing to compensate Blakeney in accordance with terms of the contract;

(ix)    Was unjustly enriched at Blakeney's expense and unlawfully retained a benefit without paying for its value; and

(b)    Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

(c)    Award equitable relief in form of back pay and front pay;

(d)    Award unpaid overtime wages, minimum wages, and unpaid wages at Blakeney's contractual hourly rate, and other compensation denied or lost to Blakeney to date by reason of Alarmco's unlawful acts;

(e)    Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Blakeney's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

(f)    Award compensatory and contractual damages as a result of Alarmco's breach of contract;

(g)    Award attorney's fees and costs;

(h)    Award pre-judgment and continuing interest as calculated by the Court;

(i)    Award injunctive and other equitable relief as provided by law;

(j)    Grant leave to amend to add claims under state and federal laws; and

    (k)    Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 16, 2023    By:    */s/ Kyle H. Steenland*
    Kyle H. Steenland (Pa. I.D. No. 327786)
    Lindsay M. Offutt (Pa. I.D. No. 327434)

    The Workers' Rights Law Group, LLP
    Foster Plaza 10
    680 Andersen Drive, Suite 230
    Pittsburgh, PA 15220
    Telephone: 412.910.9592
    Fax: 412.910.7510
    kyle@workersrightslawgroup.com
    lindsay@workersrightslawgroup.com

    *Counsel for Plaintiff, Michael Blakeney*